7 So.2d 508

## McELROY v. STATE.
### 6 Div. 747.

Court of Appeals of Alabama.
Feb. 17, 1942.

Rehearing Denied March 17, 1942.

Pennington & Tweedy, of Jasper, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

In this case, the defendant (appellant) before pleading to the merits of the indictment interposed a plea of misnomer, wherein it was alleged that his true name was Thomas W. McLeroy, and not Tom McEl-

roy, as alleged in the indictment; and that he had never been known or called by the name of Tom McElroy.

Said plea, as amended, being proper, in form and substance, the State took issue thereon, and the question was submitted to the jury, upon the testimony introduced by defendant and by the State, upon said issue. The jury returned a verdict in favor of the State, in this connection, and thereupon the defendant was put to trial upon the indictment, to which defendant demurred, upon several grounds. The demurrers were overruled, after which he interposed his plea of not guilty.

Said indictment charged (1) that he, "did transport in Walker County, Alabama, prohibited liquors in quantities of five gallons or more." . The 2nd count of the indictment was of the same import. Under the Statute, Acts 1927, p. 704, Code 1940, Tit. 29, § 187, the offense charged as above is a felony.

Upon the trial, the State introduced its evidence which tended to support the allegations of the indictment. The testimony of the defendant, and that of his several witnesses, tended to show that the defendant did not commit the offense with which he was charged, and that at the time and place in question he, the defendant, was at a different place, some twenty miles away, engaged in an innocent undertaking.

█ The foregoing, of course, presented a question for the determination of the jury.

The jury returned a verdict of guilty against the defendant and the trial court on August 12, 1940, adjudged him guilty and sentenced him to imprisonment in the penitentiary for a period of one year and one day.

On September 6, 1940, and within the time allowed by law the defendant filed and presented his motion for a new trial, in which it was alleged, among other grounds, that the jury was permitted to separate, without the consent of the defendant, during its deliberations and within the time elapsing between the submission of the case to said jury and the return of its verdict thereon.

Said motion for a new trial was regularly and legally continued for hearing by the trial court to October 31, 1940, on which day it was overruled and denied by said Court. To this action of the trial court the defendant duly and legally excepted.

The motion for a new trial was based upon all of the evidence taken upon the trial of the case in the court below and in addition thereto upon the testimony of one Jim Daily, a deputy sheriff of Walker County, taken upon the hearing of the motion, without any objection, and upon an agreed statement of facts entered into by and between the Solicitor for the State and counsel for the defendant in open court and dictated to the Court Reporter, and which sets out the following:

"That the trial of this case was held in the Circuit Court at Jasper, Alabama, and the case was submitted to the jury for its decision at five o'clock in the afternoon on the day the case was tried; that the jury remained together at the courthouse at Jasper, in Walker County, Alabama, and had not reached a decision at about 12:00 o'clock that same night; that after they had failed to reach a decision they carried the jury to Birmingham, which is in Jefferson County, and is not a county in the 14th Judicial Circuit of the State of Alabama, but which county belongs to another judicial circuit in the State of Alabama, and that said jury was carried to Birmingham and spent the night there and said jury was carried to Birmingham in accordance with the testimony given by Jim Daily on the hearing of this motion for a new trial. That after the jury was brought back from Birmingham to Jasper the following day the jury stayed together for some hours and finally reached a verdict convicting the defendant."

According to the testimony of the above named Deputy Sheriff, Jim Daily, no effort was made to provide sleeping accommodations for the jury in the city of Jasper until a late hour at night, when, seeing that the jury, had not reached a verdict, some of the Sheriff's force, tried to get a sleeping place for the jury in the only towns in Walker County, including Jasper, the County Site, where such accommodations might be found, and failed to get said accommodations. Thereupon according to the testimony of the said Daily, it was said by the Sheriff that sleeping accommodations for the jury could be found in Birmingham. Thereupon Daily, said Deputy Sheriff, "Called the Empire Hotel (in Birmingham, Jefferson County, Alabama) and made arrangements to bring them (the Jury) there." Next, three automobiles and three Deputy Sheriffs (including Daily) were provided by the Sheriff, or

his Deputies, for the transportation of the jury from the court house in Jasper to the Empire Hotel in Birmingham, four members of the jury to each of the three automobiles, there being a Deputy Sheriff in charge of each of said three automobiles. In this manner, and according to this arrangement, the trial jury was divided into three different squads and placed in three different automobiles, each squad of jurors and automobiles being placed in charge of a different Deputy Sheriff. As thus divided and separated the jury was transported out of Walker County into a different county, that is to the Empire Hotel in Birmingham, Alabama, where the jury was lodged in five or six different rooms, on the same floor but not connecting with each other. Some of these rooms were on one side of a dividing hall way and some on the other. Whether or not the case was discussed or considered by the individual jurors in their separate and several rooms in the Empire Hotel is not known. None of the Deputy Sheriffs were in any of the rooms occupied by these jurors. Mr. Daily was in a room at one end of the hall and the other two deputies were in a room at the other end of this hall. Mr. Daily testified that he did not know what transpired with reference to a discussion of the case by the jurors while they were in the Empire Hotel because as testified by him, "the hall was between some of them, they could not have all discussed it together."

The jury was carried back to Jasper the following morning and were, apparently, re-assembled in a cafe there, where they had breakfast, and from which they "were brought over to the court house." After the jury was returned to the jury room and after the elapse of several hours, in which the jury stayed together, the jury finally reached a verdict, convicting the defendant.

This record does not show that the jury was divided and separated into three different squads and carried from Jasper, in Walker County, to Birmingham, in Jefferson County, under any instructions or order from the presiding judge of the trial court. It does not show that the trial judge was even consulted about the removal of the jury from Walker County. It does not appear from this record that either the Sheriff of Walker County, or any Deputy Sheriff of said county made any timely effort to secure reasonable and necessary accommodations for the comfort and welfare

of the trial jury at night in Walker County. After it was too late to secure sleeping accommodations for the trial jury in Jasper, the County Site of Walker County, where the trial court was then sitting, and too late also to secure said accommodations elsewhere in said county, the Sheriff of said county, or his Deputies one or both, assumed responsibility for the separation and division of said jury into three squads, or sections, and their transportation in three different automobiles from Jasper, Walker County, to the Empire Hotel in Birmingham, Jefferson County.

It is not shown that any effort was made by the Sheriff, or his Deputies, to secure one vehicle for the transportation of the trial jury in a body, as might reasonably have been done, but either the Sheriff, alone, or aided by his Deputies, determined to separate the jury, and after such separation and division to transport the three different squads of jurors, in their separate and different automobiles, to Birmingham and beyond the jurisdiction of the trial court.

The Sheriff of Walker County, and his Deputies also, did not have the right or authority to do what the evidence upon the hearing of the motion for a new trial shows, without dispute, was done about the division and transportation of the trial jury from the court house in Jasper, Walker County, to the Empire Hotel in Birmingham, Jefferson County, without the consent or connivance of the defendant, and without the direct authority of the trial court so to do.

After the defendant, upon his motion for a new trial, proved the separation and transportation of the trial jury pending his trial, the State did not prove that the jurors conversed with no one affecting the prisoner's guilt, and that no other influences were exerted which may have biased their deliberations. The Deputy Sheriffs who went to Birmingham with the different squads, or divisions of the jury did not know what the jurors did, or who had access to them after the jurors went to their respective rooms, as was testified to by Mr. Daily.

█ It is the rule, in felony cases, that a separation of the jury, after the trial has been entered upon, and before verdict creates a cause for reversible error in favor of the defendant, unless the State affirmatively shows that the defendant was not thereby injured. Payne v. State, 226 Ala.

69, 145 So. 650; Melton v. State, 26 Ala.App. 265, 158 So. 196.

No precautions were taken, as far as the testimony shows, to prevent outside persons from communicating with the members of the jury, if they attempted so to do. No officer, or other person was stationed in the hall way between the different rooms occupied by members of the jury to prevent outside persons from communicating with one or more members of the jury. One of the Deputies went to sleep in a room at one end of the hall and the other Deputies went to sleep in a room at the other end of said hall, and as to what happened while they were asleep these Deputies did not know or attempt to testify.

The State did not prove, or attempt to prove, that the jurors did not converse with any one affecting the guilt of the defendant, and that no other influences were exerted which may have biased their deliberations.

It is the opinion and judgment of this court that the trial court committed reversible error in its judgment overruling and denying defendant's motion for a new trial. Arnett v. State, 225 Ala. 8, 141 So. 699; Thompson v. State, 23 Ala.App. 565, 129 So. 297; Payne v. State, supra.

It is, therefore, the order and judgment of this court that the judgment of the lower court be and the same is hereby reversed and the cause remanded.

Reversed and remanded.